IN THE CASE OF


UNITED STATES, Appellee

v.

Terrence A. BETHEA, Master Sergeant
U.S. Air Force, Appellant

No. 05-0041

Crim. App. No. 35381


United States Court of Appeals for the Armed Forces

Argued April 11, 2005

Decided June 23, 2005

GIERKE, C.J., delivered the opinion of the Court, in which
CRAWFORD, EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant:  Captain Christopher S. Morgan (argued); Colonel
Carlos L. McDade, Major Terry L. McElyea, Major Sandra K.
Whittington, and Major James M. Winner (on brief)

For Appellee:  Major Carrie E. Wolf (argued); Lieutenant Colonel
Robert V. Combs, Lieutenant Colonel Gary F. Spencer, and Major
Kevin P. Steins (on brief)

Military Judge:  David F. Brash


  **This opinion is subject to revision before final publication.**

Chief Judge GIERKE delivered the opinion of the Court.

Appellant's urine sample tested positive for the metabolite of cocaine. A military magistrate then issued a search authorization to seize a hair sample from Appellant to test it for evidence of drug use. We conclude that the search authorization was supported by probable cause.

BACKGROUND

Appellant was tried by a general court-martial for a single specification alleging use of cocaine on divers occasions between January 17, 2001, and February 16, 2001. Following a contested trial, the members found Appellant guilty as charged of violating Article 112a, Uniform Code of Military Justice (UCMJ).[1] A key piece of evidence against Appellant was the result of a hair analysis that indicated multiple uses of cocaine. The admissibility of that evidence is the subject of this appeal.

On February 7, 2001, Appellant provided a urine sample as part of a random drug test. His urine sample contained 238 nanograms per milliliter of the cocaine metabolite; the Department of Defense's (DOD's) cutoff for a "positive" test result is 100 nanograms per milliliter.

Following this positive urinalysis result, an Air Force Office of Special Investigations (OSI) agent interviewed

---

[1] 10 U.S.C. § 912a (2000).

Appellant, who denied that he had knowingly used cocaine. OSI Special Agent (SA) Michael Tanguay then sought authorization to seize a hair sample from Appellant for further testing. He presented an affidavit to Yokota Air Base's primary magistrate, Colonel Dale A. Hess. The affidavit described the results of Appellant's urinalysis. It stated next that, based on SA Tanguay's training and information gathered from a forensic science consultant and the National Medical Services Laboratory, "affiant believes trace amounts of cocaine may be trapped in the cortex of BETHEA's hair follicles." The affidavit then went into greater detail to support that conclusion, explaining that:

> a. As the blood circulates through the body, it nourishes the hair follicle. If there are drugs in the blood, trace amounts of the drug become trapped in the internal portion of the hair, known as the cortex. Those traces remain in the hair as it grows out from the body. These are not removed with routine hygienic washings nor are they flushed out. Thus, chronic drug use, as well as a binge use of a drug, can be detected for a period of up to several months, depending on the length of the hair sample.

The affidavit also described the scientific tests used to analyze hair for evidence of drug use. The affidavit then compared urine testing with hair testing:

> c. While urine tests can determine whether a drug was used at least once within the recent past, hair analysis potentially provides information on a binge use or chronic drug use ranging from months, depending on the length of the hair and the type of hair.

> d. Hair analysis is not subject to false negatives due to temporary abstention or excessive

fluid intake. It is currently accepted that hair records drug use in chronological manner and in relative proportion to the amount consumed. The National Medical Services Laboratory can distinguish between heavy, medium and light drug users. Consequently, such hair analysis may be used to prove binge use as well as multiple and/or chronic use of controlled substances.

After spending approximately fifteen minutes with SA Tanguay, the military magistrate issued an authorization to seize from Appellant "[b]odily hair for the purposes of drug testing." The resulting analysis indicated that Appellant had used cocaine on multiple occasions.

At trial, the defense moved to suppress the results of the hair analysis. The defense argued that the authorization to seize Appellant's hair was not supported by probable cause.

During the suppression hearing, the military magistrate who authorized the search took the stand. Colonel Hess testified that "in my mind there was no doubt" probable cause existed. He stated that he was not "concerned about binge use. I was concerned about the fact that [Appellant] came up positive on urinalysis and I wanted confirmation." He testified that "I knew . . . that the hair test would confirm whether or not he had used cocaine." He indicated that this conclusion was "[b]ased on previous knowledge and experience" that the affidavit "confirmed."

During the suppression hearing, OSI Special Agent (SA) Shannon Nuckols also testified. SA Nuckols was one of six OSI

forensic science consultants.  SA Nuckols testified that he did not know if hair analysis can detect "a specific single use." But, SA Nuckols testified, a hair analysis will indicate "multiple uses over a period of time."  He later clarified that "binge or chronic use . . . would show up in hair."  He defined binge use as "numerous uses over a short period of time, 12, 24, 36 hours."  SA Nuckols also testified that "a positive urinalysis doesn't necessarily show a single use.  You can get multiple uses that show up in a urinalysis."  While SA Nuckols was on the stand, the military judge said, "I want to move back from the science a little bit and just talk sort of logic or common sense.  Somebody pops positive on a urinalysis 30 days ago, is there a fair shot hair is going to be able to detect some drug?"  SA Nuckols answered, "Yes, Sir."

On cross-examination, the defense established that SA Nuckols had previously testified at the Article 32 investigation[2] that "a single small use" of cocaine would not be detected by hair analysis.  SA Nuckols then expanded, "[M]y experience and training is if I had to choose between the two methods, urinalysis and hair, if you're looking for a single use, urinalysis would be better.  And that typically hair shows chronic uses -— multiple uses."  SA Nuckols also agreed with the military judge that based on the DOD cutoff levels, a positive

---

[2] See Article 32, UCMJ, 10 U.S.C. § 832 (2000).

urinalysis is "equally consistent with the tail end of a binge use or . . . a very small use [a] short time prior to submission of the sample."

The military judge denied the motion to suppress. He concluded that "the positive urinalysis alone, coupled with the information available to the magistrate, more than adequately demonstrates a reasonable likelihood that cocaine or a cocaine derivative will be found in the accused's hair," especially because the seizure would occur "within a month of the alleged use." The military judge concluded that evidence derived from seizing the hair was admissible "even if the Magistrate operated under the assumption that the accused had only used cocaine on one occasion approximately two weeks before the requested search." The military judge concluded that the "[m]agistrate relied upon information he had been provided which suggests that drug hair testing can detect a single drug use, albeit characterized as 'binge.'" The military judge then observed that he was "convinced that it is more than reasonable to assume, based upon the contents of the affidavit, that hair drug testing can detect a . . . single drug use if the hair test is performed within two months of the alleged use, regardless of how that use may be characterized."[3]

---

[3] We caution that we express no opinion as to the correctness of the military judge's interpretation of "binge" or the accuracy

The military judge also found that "there was no evidence whatsoever, either direct or circumstantial," that the requesting agents had intentionally or recklessly withheld relevant information from the military magistrate. The military judge then repeated that a hair analysis can detect "binge use," which "can reasonably mean one or a series of large doses." He concluded that SA Nuckols's testimony and the affidavit itself "clearly" indicate that "a single use of cocaine can be detected by hair testing, particularly when the hair is seized within several months of the alleged use."

The military judge also concluded in the alternative that, even if the search authorization had not been supported by probable cause, the evidence would be admissible under the good faith exception to the exclusionary rule.

The Air Force Court of Criminal Appeals affirmed the military judge's ruling in an unpublished opinion.[4] The Air Force Court ruled that Appellant's urinalysis results were "sufficient to establish a 'fair probability' that the appellant's hair would contain evidence of cocaine use."[5] The Air Force Court also agreed with the military judge that regardless of whether the authorization was supported by

---

of the military judge's characterization of the ability of hair analysis to detect a single use of a controlled substance.

[4] United States v. Bethea, No. ACM 35381, 2004 CCA LEXIS 175, 2004 WL 1725024 (A.F. Ct. Crim. App. July 20, 2004).

[5] 2004 CCA LEXIS 175, at *5, 2004 WL 1725024, at *2.

probable cause, the evidence would be admissible because the OSI agents who seized Appellant's hair sample "acted in 'objectively reasonable reliance' upon the magistrate's facially valid search authorization."[6]

## DISCUSSION

This case concerns whether Appellant's urinalysis results provided probable cause to support the seizure of a sample of his hair.

The affidavit presented to the military magistrate established that Appellant's urine contained the metabolite that the body produces following the use of cocaine. Neither Appellant's results in particular, nor positive urinalysis results in general, suggest whether the individual used a controlled substance once or more than once. So Appellant's urinalysis results were equally consistent with a single use of cocaine or with multiple uses.

The affidavit that was before the military magistrate indicated only that hair analysis would detect "binge" or "chronic" use of a drug. Yet the military magistrate suggested and the military judge expressly stated that they believed hair analysis could detect a single use of cocaine. To decide this case, we need not engage in a semantic analysis of the meaning

---

[6] 2004 CCA LEXIS 175, at *5-*6, 2004 WL 1725024, at *2 (citing United States v. Pond, 36 M.J. 1050, 1059 (A.F.C.M.R. 1993)).

of "binge." Even if that term is properly understood to refer only to multiple uses, we conclude for the reasons set forth below that Appellant's urinalysis results provided probable cause to seize a sample of his hair.

A military judge's determination of whether probable cause existed to support a search authorization is reviewed for an abuse of discretion.[7] "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed."[8] "In reviewing probable cause determinations, courts must look at the information made known to the authorizing official at the time of his decision. The evidence must be considered in the light most favorable to the prevailing party."[9]

"Probable cause to search exists when there is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be search[ed]."[10] The test for probable cause is whether, under the "totality of the circumstances," the magistrate had a "substantial basis" for determining that probable cause existed.[11] A probable cause determination is a "practical, common-sense decision whether,

---

[7] United States v. Carter, 54 M.J. 414, 418 (C.A.A.F. 2001).
[8] Id. (alternations in original) (internal citations and internal quotation marks omitted).
[9] Id. (internal citation omitted).
[10] Military Rule of Evidence 315(f)(2).
[11] Illinois v. Gates, 462 U.S. 213, 230, 239 (1983).

9

given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[12]

The Supreme Court has emphasized that "probable cause is a flexible, common-sense standard."[13]  A probable cause determination merely requires that a person "of reasonable caution" could believe that the search may reveal evidence of a crime; "it does not demand any showing that such a belief be correct or more likely true than false."[14]  So even though "people often use 'probable' to mean 'more likely than not,' probable cause does not require a showing that an event is more than 50% likely."[15]

---

[12] Id. at 238.

[13] Texas v. Brown, 460 U.S. 730, 742 (1983).

[14] Id. (emphasis added) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).

[15] United States v. Olson, No. 03-CR-51-S, 2003 U.S. Dist. LEXIS 24607, at *16, 2003 WL 23120024, at *5 (W.D. Wis. July 11, 2003) (citing United States v. Garcia, 179 F.3d 265, 269 (5th Cir. 1999)).  See also Ostrander v. Madsen, Nos. 00-35506, 00-35538, 00-35541, 2003 U.S. App. LEXIS 1665, at *8, 2003 WL 193565, at *2 (9th Cir. Jan. 28, 2003) ("Probable cause is met by less than a fifty percent probability, so that even two contradictory statements can both be supported by probable cause."); Samos Imex Corp. v. Nextel Communications, Inc., 194 F.3d 301, 303 (1st Cir. 1999) ("The phrase 'probable cause' is used, in the narrow confines of Fourth Amendment precedent, to establish a standard less demanding than 'more probable than not.'"); United States v. Burrell, 963 F.2d 976, 986 (7th Cir. 1992) ("'Probable cause requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing

When evaluated under this standard, the affidavit provided the military magistrate with a substantial basis for concluding that there was probable cause to authorize the seizure of Appellant's hair. The urinalysis results were consistent with, though not necessarily indicative of, multiple uses of cocaine. The information presented to the military magistrate indicated that an analysis of Appellant's hair would detect multiple uses of cocaine. So it was as likely as not that evidence of cocaine use would be found in Appellant's hair. That degree of likelihood more than satisfies the probable cause standard.

In light of our holding that there was a substantial basis for finding probable cause, we need not consider whether the military judge and the Air Force Court were correct when they determined that even absent probable cause, the evidence would have nevertheless been admissible under the exclusionary rule's good faith exception.

---

that the officer's belief is more likely true than false.'") (quoting Brinegar v. United States, 338 U.S. 160, 175 (1949)); United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987) ("In order to establish probable cause, it is not necessary to make a prima facie showing of criminal activity or to demonstrate that it is more probable than not that a crime has been or is being committed.") (internal quotation marks and citation omitted).

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.