**UNITED STATES, Appellee**

v.

**Renice L. FREEMAN, Staff Sergeant
U.S. Air Force, Appellant.**

No. 94–0004.
CMR No. 29714.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 11, 1995.

Decided Aug. 1, 1995.

For Appellant: *Lieutenant Colonel Joseph L. Heimann* (argued); *Colonel Jay L. Cohen* and *Major George F. May* (on brief); *Captain Eric N. Eklund.*

For Appellee: *Major Jules D. Silberberg* (argued); *Colonel Jeffery T. Infelise* (on brief); *Colonel Thomas E. Schlegel.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

1. On November 21, 1991, at Luke Air Force Base, Arizona, appellant was found guilty of operating a vehicle while drunk; separate specifications of possessing and using cocaine; writing 6 checks with insufficient funds for payment on their presentment (alleged in 2 specifications); and dishonorably failing to pay a debt, in violation of Articles 111, 112a, 123a, and 134, Uniform Code of Military Justice, 10 USC §§ 911, 912a, 923a, and 934, respectively. His gener-

al court-martial composed of officer members sentenced him to a bad-conduct discharge, confinement for 24 months, forfeiture of $400 pay per month for 3 months, and reduction to the grade of E–1. On January 28, 1992, the convening authority approved the sentence. The Court of Military Review * on June 15, 1993, modified one of the findings related to his failing to pay a debt but affirmed the remaining findings of guilty. It then reassessed the sentence based upon the modified findings and concluded that the adjudged sentence approved by the convening authority was appropriate.

2. On March 16, 1994, this Court granted review on the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING THE DEFENSE MOTION TO DISMISS SPECIFICATION 2 OF CHARGE II BASED ON THE FACT THAT THE SECTION COMMANDER, WHO AUTHORIZED THE SEIZURE OF APPELLANT'S URINE, HAD TAKEN AN ACTIVE ROLE IN PERFORMING A PRELIMINARY INVESTIGATION IN THE CASE AND HAD DIRECTED A FURTHER INVESTIGATION IN THE CASE AND THUS WAS NOT NEUTRAL AND DETACHED WITHIN THE MEANING OF MIL. R.EVID. 315.

We hold that the military judge did not err in holding that the seizure of appellant's urine was ordered by a commander who was neutral and detached within the meaning of the Fourth Amendment and Mil.R.Evid. 315, Manual for Courts–Martial, United States, 1984. *See United States v. Ezell,* 6 MJ 307 (CMA 1979); *United States v. Drew,* 15 USCMA 449, 35 CMR 421 (1965).

3. The military judge made the following factual findings concerning the defense motion to dismiss the drug-use specification in this case:

Regarding the defense motion to dismiss Specification 2 of Charge II, I find:

* See 41 MJ 213, 229 n. * (1994).

[a] Captain David Pfaffenbichler is the Squadron Section Commander for the 58th Medical Group at Luke Air Force Base, Arizona. [R. 14.] The accused is assigned to the 58th Medical Group and was subject to the command of Captain Pfaffenbichler at all times relevant to this issue.

[b] On 2 June 1991, at about 0125 hours, Staff Sergeant Renice L. Freeman (the accused) was arrested by Peoria, Arizona police officers for driving while intoxicated and transported to a Maricopa County Jail.

[c] Incident to a search of the accused's personal effects, a white powdery substance and a plastic straw were found in a plastic bag in a fanny-pack taken from him that night. The substance was field tested by Peoria Police Officer Robertson and tested positive for cocaine.

[d] In the early morning hours of 2 June 1991, Sergeant Freeman's First Sergeant, Master Sergeant Busse, was notified of the accused's arrest. Sergeant Busse waited until daylight hours before calling then Lieutenant [1st Lt.], now Captain Pfaffenbichler, 832 Medical Group [became the 58th on Oct. 1, 1991] Squadron Section Commander to inform him of the accused's arrest for driving while intoxicated and possession of cocaine.

[e] Captain Pfaffenbichler is the accused's squadron section commander.

[f] The accused was released from jail on 2 June 1991, and ordered by Sergeant Busse to report to Captain Pfaffenbichler at 0730 hours the next day which was Monday, 3 June 1991.

[g] The accused reported as ordered to Captain Pfaffenbichler at 0730 hours, whereupon Captain Pfaffenbichler advised the accused he was suspected of driving while intoxicated, wrongfully possessing and using cocaine, and given Article 31(b) [, UCMJ, 10 USC § 831(b) ] rights' advisement. *Immediately thereafter, Captain Pfaffenbichler ordered the accused to report to Special Agent McGinnes at the OSI [Office of Special Investigations] building. Captain Pfaffenbichler did not ask any questions of the accused at that time. The accused indicated he was willing to answer questions and waived his*

*right to consult counsel.* Master Sergeant Busse had talked with Special Agent McGuinnes [sic] of the AFOSI who indicated he was willing to investigate the case.

[h] Captain Pfaffenbichler and/or Master Sergeant Busse contacted the reports section (SPOI) at the Security Police Squadron [ (SPS) ] at Luke Air Force Base to secure a copy of either the Peoria Police report of the arrest of the accused, or a copy of the AF Form 1569 relating the incident. Captain Pfaffenbichler has no current memory of who made the contacts with SPOI, but indicates he may have called at least once. A recent review of the file he maintained on the accused for this incident indicates he received only the Form 1569 as information of the arrest downtown.

[i] Captain Pfaffenbichler requested and reviewed the accused's Personal Information File (PIF), and found evidence of financial difficulties experienced by the accused.

[j] Captain Pfaffenbichler summoned Master Sergeant Ackert, the accused's immediate supervisor, and questioned him about Sergeant Freeman's duty performance. Sergeant Ackert provided Captain Pfaffenbichler with Letters of Counseling and memos for record indicating Sergeant Freeman had been late for work. *Captain Pfaffenbichler was unfamiliar with the accused because the accused was relatively new to the unit. Captain Pfaffenbichler sought the information to know what member was involved, and not as an effort to secure additional evidence for future prosecution.*

[k] After speaking with the accused's supervisor, and reviewing his PIF and the police report, *Captain Pfaffenbichler called the legal office and conferred with Captain Scholz, the deputy SJA on what should be done. It was determined that sufficient probable cause existed for Captain Pfaffenbichler to authorize a urinalysis search.* Captain Pfaffenbichler had decided a urinalysis should be done, though he did not distinguish the difference between the various modes available. It was his

intent to resolve the situation before him. He presented the various facts he had before him to Captain Scholz, including the accused's arrest for DUI and possession of drugs, and the information from the accused's personnel file.

[*l*] After receiving approval for a search, Captain Pfaffenbichler prepared a letter (attachment Appendix I) [omitted] ordering the accused to provide a probable cause urinalysis. This order was given to the accused by Captain Pfaffenbichler.

[m] On 3 June 1991, after determining there was sufficient probable cause to order a urinalysis search of the accused, either Master Sergeant Busse or Captain Pfaffenbichler contacted the hospital laboratory, specifically Captain Ann Johnson, to notify her that the accused was reporting for collection of a urine specimen. Captain Johnson cannot now recall who telephoned her, but it may well have been Captain Pfaffenbichler. Captain Johnson had requested of commanders that she be given such a courtesy call in these situations, though it is not necessary. Collections will be made when authorized.

[n] A sample was collected from the accused and was tested. This test indicates a presence of the metabolite of cocaine and forms the basis for Specification 2 of Charge II.

[*o*] The accused was arrested on 2 June 1991 and held in civilian custody until that afternoon. Captain Pfaffenbichler took no action on that day because the accused was being held by the civil authorities.

[p] Captain Pfaffenbichler has no special training in the law of searches and seizures, but he has been a section commander for about two years. He knows that [sic] distinction between "viewing" information and actively "gathering" evidence. *He was not attempting to act as an investigator. His demeanor and responses in court reflected a commander who was earnestly trying to follow established procedures and advice provided him and who wanted to review all possible information on one of his squadron members prior to making a decision.* He was not actively

working toward a set result with a view to prosecuting the accused.

(Emphasis added.)

4. Prior to trial on the merits, appellant made a motion to dismiss specification 2 of Charge II—wrongful use of cocaine. In making this motion appellant argued that the seizure of his urine was illegal because the probable-cause urinalysis was not authorized by a neutral and detached commander. Essentially appellant argues that his commander abandoned his impartial role when he advised appellant of his Article 31 rights, requested a civilian Police Report, reviewed appellant's service record, and met with appellant's immediate supervisor.

———

■ 5. Appellant at trial asserted that then 1st Lt. Pfaffenbichler "was not neutral and detached when he authorized a probable cause search as required under Mil.R.Evid. 315(d) and the Fourth Amendment of the United States Constitution." (App. Ex. I.) The Government on appeal agrees that the appropriate question for review in this case is "[w]hether the commander was sufficiently detached and neutral to issue a search authorization under Mil.R.Evid. 315[,]" Answer to Final Brief at 2, but it argues that the total record supports a conclusion contrary to appellant's claim. We hold that Captain, then Lieutenant, Pfaffenbichler was a "neutral and detached" commander as required by our case law and Manual for Courts–Martial, United States, 1984. *See generally United States v. Lopez*, 35 MJ 35, 41 (CMA 1992). (The 1984 Manual—Mil.R.Evid. 315(d)—added the requirement of impartiality which was intended to incorporate the neutral-and-detached standard of *United States v. Ezell*, 6 MJ 307 (CMA 1979). *See* Drafters' Analysis, Manual, *supra* at A22–27 (1994 ed.).)

6. Appellant's argument of disqualification under the Fourth Amendment and Mil.R.Evid. 315(d) is based on Captain Pfaffenbichler's testimony concerning his pre-authorization activities in this case. He particularly contends on appeal as follows:

Indeed, after learning of the appellant's arrest by the civil authorities, then Lt. Pfaffenbichler made an extensive inquiry into the matter to include obtaining and reviewing the civilian police report or a summary of it made by the military police, obtaining and examining the appellant's personnel file, soliciting the appellant's supervisor for inputs regarding the appellant, reading the appellant his Article 31 rights and finally, directing the appellant to report to the AFOSI in order that he could be interviewed. (R. 15–23). . . .

Final Brief at 6.

7. Appellant also notes:

As previously stated, Captain Pfaffenbichler represented the lowest level of command, in fact quasi-command, in that he was a unit section commander holding the rank of 1Lt at the time he made the probable-cause determination to seize the appellant's urine. Moreover, as abundantly detailed above, he had absolutely no Fourth Amendment training and was not even briefed on the meaning of probable cause in making the specific determination at issue. . . .

Final Brief at 11.

8. The above argument for disqualification of then 1st Lt. Pfaffenbichler ignores other evidence in this record which negates any suggestion that this officer abandoned his role as a neutral and detached commander in this case. For example, although the above commander advised appellant of his Article 31 rights, it is also a fact that he did not ask appellant a single question about the incident in the civilian community. *See United States v. Guerette*, 23 USCMA 281, 283, 49 CMR 530, 532 (1975); *cf. United States v. Ezell*, 6 MJ at 319. Moreover, although the above commander requested the civilian police report on the off-base incident, it is also true he did not initiate that report or become in any way personally involved in that investigation. *Cf. United States v. Murray*, 12 MJ 139, 141 (CMA 1981); *United States v. Cordero*, 11 MJ 210 (CMA 1981); *United States v. Rivera*, 10 MJ 55, 61 (CMA 1980). In addition, although the above commander reviewed appellant's service jacket and talked with appellant's work supervisor, it was found as fact [j] that appellant was "relatively new to the unit" and he "was unfamil-

iar" to the commander. *See United States v. Rushing,* 11 MJ 95, 97 (CMA 1981) (possession of prior knowledge of general-conduct record not type of information to make one predisposed against accused). Finally, although then 1st Lt. Pfaffenbichler was not an officer experienced in the intricacies of determining probable cause, it is uncontroverted that he consulted fully with a judge advocate prior to making his decision. *See United States v. Lopez,* 35 MJ at 42.

9. Viewing this record in its entirety, we have no doubt that then 1st Lt. Pfaffenbichler was a neutral and detached magistrate within the meaning of the Fourth Amendment and Mil.R.Evid. 315(d). A military commander plays a number of roles in our military justice system. One of his roles is as a quasi-judicial officer who can order a search if he remains neutral and detached. However, the impartiality demands of this role may appear to conflict with other functions he performs pertaining to "a commander's responsibility for the maintenance of order and discipline in his command[.]" *United States v. Staggs,* 23 USCMA 111, 114, 48 CMR 672, 675 (1974). For example, in "exercising his responsibilities as a commander," *United States v. Guerette,* 23 USCMA at 283, 49 CMR at 532, a military leader has to "direct and sometimes participate in investigations into criminal activities." *United States v. Staggs, supra.* However, it is only when the commander participates as a law enforcement official or is personally and actively involved in the process of gathering evidence that he loses his right to authorize searches which can produce admissible court-martial evidence. *Id. See* Mil.R.Evid. 315(d); *see also United States v. Ezell,* 6 MJ at 318–19.

10. Requiring military commanders to honor the legal boundaries of their respective roles is crucial to ensuring servicemembers receive the legal protection due them. We have said:

> [T]he fundamental idea behind the requirement that there be authorization to search separate from that of the police officer is that the official to whom the request is made brings "judicial" rather than a "police" attitude to the examination of the operative facts....

[AND]

> The power to authorize searches is indeed a "judicial function." However, within the military it is not exercised, nor could it be, by a strictly "judicial officer"; it is an incident of command. There is nothing in this case to indicate that the executive officer was less capable of exercising a "judicial" rather than a "police" attitude to the examination of the operative facts.

*United States v. Drew,* 15 USCMA at 453, 454, 35 CMR at 425, 426, *citing Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). Our review of the entire record makes clear that then 1st Lt. Pfaffenbichler did not cross the appropriate line in appellant's case.

The decision of the United States Air Force Court of Military Review is affirmed.

Judges CRAWFORD, GIERKE, and WISS concur.

COX, Judge (concurring):

11. I concur, although I would not waste much ink trying to convince readers that this commander was neutral and detached. Elsewhere I have expressed the view that the term "neutral and detached commander" is an oxymoron. *United States v. Lopez,* 35 MJ 35, 45 (CMA 1992) (Cox, J., concurring with modest reservations). I agree here that the search did not violate the Fourth Amendment and was obviously reasonable.