UNITED STATES, Appellee

v.

Robert C. HUNTZINGER, Specialist
United States Army, Appellant

No. 09-0589

Crim. App. No. 20060976

United States Court of Appeals for the Armed Forces

Argued January 26, 2010

Decided April 30, 2010

EFFRON, C.J., delivered the opinion of the Court, in which
BAKER, ERDMANN, STUCKY, and RYAN, JJ., joined.

Counsel

For Appellant:  Lieutenant Colonel Matthew M. Miller (argued);
Colonel Mark Tellitocci and Lieutenant Colonel Jonathan F.
Potter (on brief); Major Grace M. Gallagher and Captain Candace
White Halverson.

For Appellee:  Captain Stephanie R. Cooper (argued); Colonel
Norman F. J. Allen III, Lieutenant Colonel Martha L. Foss, Major
Sara M. Root, and Captain James M. Hudson (on brief).


Military Judge:  Reynold P. Masterton


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone, convicted Appellant, contrary to his pleas, of two specifications of violating a lawful general order and one specification of possession of child pornography, in violation of Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 934 (2000). The sentence adjudged by the court-martial and approved by the convening authority included a bad-conduct discharge, confinement for ten months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The United States Army Court of Criminal Appeals affirmed the findings and approved sentence. United States v. Huntzinger, No. ARMY 20060976, 2009 CCA LEXIS 209, at *7 (A. Ct. Crim. App. Mar. 18, 2009) (unpublished).

On Appellant's petition, we granted review of the following issues related to the evidence of child pornography obtained from the search of Appellant's laptop computer and external hard drive:

> I.  WHETHER THE MILITARY JUDGE ERRED IN CONCLUDING THAT NO SOLDIER AT FORWARD OPERATING BASE (FOB) LOYALTY HAD A REASONABLE EXPECTATION OF PRIVACY IN ANY REGARD.
>
> II.  WHETHER THE MILITARY JUDGE ERRED IN DENYING A MOTION TO SUPPRESS APPELLANT'S EXTERNAL HARD DRIVE AND PASSWORD PROTECTED LAPTOP WHEN THE COMMANDER WHO ORDERED THE SEIZURE OF THE EQUIPMENT IMMEDIATELY SEARCHED THE EQUIPMENT UPON SEIZURE, DEMONSTRATING THAT HE WAS PERFORMING LAW

ENFORCEMENT FUNCTIONS AND WAS NOT NEUTRAL AND
DETACHED WHEN SEIZING THE ITEMS.

III. WHETHER THE DOCTRINE OF INEVITABLE DISCOVERY IS
APPLICABLE WHEN THERE ARE NO INDEPENDENT POLICE
ACTIVITIES, OR TESTIMONY OR EVIDENCE OF ROUTINE
POLICE PRACTICES, THAT WOULD HAVE INEVITABLY
RESULTED IN DISCOVERY, AND NO OTHER EXCEPTION TO
THE FOURTH AMENDMENT APPLIES.

IV. WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED
IN CONCLUDING THAT PROBABLE CAUSE EXISTED TO
SUPPORT THE SEARCH AUTHORIZATION OF APPELLANT'S
LAPTOP COMPUTER AND DETACHABLE HARD DRIVE.

For the reasons set forth below, we conclude that the
evidence was obtained from an authorized search, and we affirm.

## I.   BACKGROUND

The present appeal concerns an investigation initiated by
the commanding officer of Appellant's unit, Captain (CPT) Aaron
J. Miller, during a deployment to Forward Operating Base (FOB)
Loyalty, Baghdad, Iraq.  CPT Miller ordered the investigation
after obtaining information indicating the circulation of child
pornography within his command.  The ensuing investigation led
to the discovery of hundreds of sexually explicit digital photos
and video clips on Appellant's computer and external hard drive,
including child pornography.

At the outset of the trial, Appellant moved to suppress the
evidence from the search.  The following summarizes the evidence
presented at the hearing, as well as the findings of fact and

conclusions of law entered by the military judge in denying the motion to suppress.

The commanding officer, CPT Miller, testified that he first learned of the child pornography issue as he was leaving the FOB on a mission. The unit's information officer, Sergeant First Class (SFC) Richard A. Powell, told CPT Miller that he had exchanged music files with Private First Class (PFC) Dennis Parr earlier in the day, and later discovered that one of the files contained a video clip depicting what he suspected was child pornography. CPT Miller testified that SFC Powell appeared to be "shaken up" when he disclosed this information.

Based on this conversation, CPT Miller ordered the unit's first sergeant, Sergeant (1SG) Joseph Goodwater, to look into the situation. He instructed 1SG Goodwater to "make sure you get a statement from PFC Parr, make sure you get a statement from Powell and have those ready for me . . . should we return to FOB Loyalty that evening." CPT Miller told 1SG Goodwater that they would "figure out what [they] need[ed] to do next" at that time.

1SG Goodwater testified that he first obtained a statement from PFC Parr. PFC Parr said that he had previously shared music files with three other soldiers, in addition to Appellant. According to PFC Parr, the video clip unexpectedly popped up on his computer earlier in the day. He immediately deleted the

4

file, but did not report the incident to anyone.  PFC Parr told 1SG Goodwater that he had shared files with SFC Powell and three other individuals, including Appellant.  In response to the question as to who might have "downloaded pornography to your computer or hard drive," PFC Parr responded:  "Maybe Huntzinger."  PFC Parr also provided his computer to 1SG Goodwater.

CPT Miller testified he returned to FOB Loyalty in the evening, and 1SG Goodwater briefed him on the status of the investigation, including the information obtained from PFC Parr. CPT Miller reviewed PFC Parr's written statement.  He also viewed two videos discovered on PFC Parr's computer.  CPT Miller testified that one of the videos was the same as the video viewed by SFC Powell, and he described the second, entitled "13-year-old Russian girl," as "pornography."  He noted that PFC Parr had "specifically named Huntzinger as someone he could have received pornography from."  He also testified that "at this point it appeared that I had a contraband issue in the battery and that these other three individuals may have the same material on their computers and external memory devices."  CPT Miller directed 1SG Goodwater to search the barracks rooms of the three soldiers and to seize their laptop computers and external memory devices.

1SG Goodwater testified that Appellant's room was located in a brick building on FOB Loyalty, which he shared with two other soldiers. He added that the barracks rooms were subject to regular inspections and that items permitted on the FOB were highly regulated. When he went to Appellant's room, the door was open. He entered the room and seized Appellant's laptop computer and external hard drive.

CPT Miller viewed files on Appellant's external hard drive, including one entitled "nasty" and a large number of files depicting what he considered to be child pornography. At that time, he could not view files on Appellant's laptop computer because it was password protected.

Later that evening, CPT Miller advised Appellant of his self-incrimination rights under Article 31, UCMJ, 10 U.S.C. § 831 (2000). Appellant said that he wanted to speak to an attorney. CPT Miller asked Appellant for the password to his computer, which he provided. CPT Miller used the password to search the files on Appellant's laptop computer, leading to the discovery of additional pornographic material.[1]

---

[1] In the present appeal, Appellant focuses on CPT Miller's request for his password as a factor bearing on CPT Miller's impartiality in the context of a search authorization under the Fourth Amendment and Military Rule of Evidence (M.R.E.) 315. Appellant does not contend that CPT Miller's request for his password violated either his privilege against self-incrimination or his right to counsel.

The following day, two agents of the United States Army Criminal Investigation Command (CID) conducted an investigation into the incident. Appellant signed a consent form, agreeing to the search of his laptop computer, external hard drive, and an SD memory card. Later analysis of these sources identified evidence admitted against Appellant at trial.

The military judge denied the motion to suppress, ruling that CPT Miller had probable cause to search and seize Appellant's computer and hard drive under M.R.E. 315 and the Fourth Amendment. He found that CPT Miller based his decision on reliable information regarding the discovery of child pornography on PFC Parr's computer, as well as information indicating that the pornography had been provided to PFC Parr by one of three identified soldiers, including Appellant. The military judge also cited four additional grounds for denying the motion even if CPT Miller did not have probable cause to order the search: (1) the evidence was admissible under the good faith exception set forth under M.R.E. 311(b)(3) because CPT Miller had a substantial basis for determining probable cause, and officials executing the search and seizure acted reasonably and in good faith; (2) the evidence was admissible pursuant to the inevitable discovery exception under M.R.E. 311(b)(2); (3) Appellant had no reasonable expectation of privacy in combat zone living quarters that were highly

regulated and subject to regular inspections; and (4) Appellant voluntarily consented to the CID search of his computer. The Court of Criminal Appeals affirmed the military judge's ruling, but expressly declined to reach the consent issue.

## II. DISCUSSION

We review a military judge's denial of a motion to suppress for an abuse of discretion. United States v. Leedy, 65 M.J. 208, 212 (C.A.A.F. 2007). An abuse of discretion occurs when the military judge's findings of fact are clearly erroneous or based upon a misapprehension of the law. Id. at 213. In the present case, we consider whether the military judge abused his discretion when he ruled as a matter of law that there was a substantial basis for finding probable cause existed under M.R.E. 315(f)(2). See id. at 212 (citing United States v. Rader, 65 M.J. 30, 32 (C.A.A.F. 2007)). We review the legal question of sufficiency for finding probable cause de novo, using a totality of the circumstances test. Id.

A. EXPECTATION OF PRIVACY IN APPELLANT'S QUARTERS (ISSUE I)

At the outset, we note that the granted issues concern the unique powers of search and seizure granted to military commanders under the application of the Fourth Amendment to members of the armed forces. See, e.g., M.R.E. 311-317. These

8

rules apply in domestic and deployed locations.  Although the application of the rules and the exceptions therein depend upon the context, there is no general exception for locations or living quarters in a combat zone.  See United States v. Poundstone, 22 C.M.A. 277, 279, 46 C.M.R. 277, 279 (1973).

In the present case, Appellant lived in a room that could be locked to prevent entry.  The Government did not demonstrate at trial or on appeal that the case involved special circumstances in which Appellant would have no expectation of privacy in such a room, nor did the Government rely at trial or on appeal on a commander's powers of inspection under M.R.E. 313.  Under these circumstances, we consider the present case in light of the military judge's primary ruling regarding probable cause and we do not rely on the alternate ruling, raised in Issue I, in which the military judge held that Appellant had no reasonable expectation of privacy in his living quarters.

B.  DISQUALIFICATION OF THE COMMANDER UNDER M.R.E. 315 (ISSUE II)

A military commander may authorize a search based upon probable cause with respect to persons or property under the control of the commander in accordance with M.R.E. 315(d)(1).[2] Appellant contends that the commander was disqualified from

---

[2] The constitutionality of M.R.E. 315(d)(1) (describing the search authorization powers of military commanders) is not at issue in the present appeal.

granting the search authorization in the present case based upon his involvement in the investigation.

M.R.E. 315(d) provides that a person authorizing a search under the rule must be "an impartial individual." The evaluation of impartiality includes consideration of whether a commander's actions call into question the commander's ability to review impartially the facts and circumstances of the case. See United States v. Freeman, 42 M.J. 239, 243 (C.A.A.F. 1995); Unites States v. Middleton, 10 M.J. 123, 129 (C.M.A. 1981); United States v. Powell, 8 M.J. 260, 261 (C.M.A. 1980); United States v. Sam, 22 C.M.A. 124, 127, 46 C.M.R. 124, 127 (1973); United States v. Drew, 15 C.M.A. 449, 453, 35 C.M.R. 421, 425 (1965). To the extent that our case law has indicated that a commander acting as a "law enforcement official" with a "police attitude" may be disqualified from authorizing a search, see, e.g., Freeman, 42 M.J. at 243, the disqualification applies when the evidence demonstrates that the commander exhibited bias or appeared to be predisposed to one outcome or another. The participation of a commander in investigative activities in furtherance of command responsibilities, without more, does not require a per se disqualification of a commander from authorizing a search under M.R.E. 315. See, e.g., id. In that regard, a commander's direction to take reasonable investigative steps to ascertain the facts prior to making an impartial

probable cause decision does not disqualify the commander from issuing a search authorization under M.R.E. 315. Compare United States v. Ezell, 6 M.J. 307, 320-22 (C.M.A. 1979) (commander disqualified because of bias related to prior disciplinary issues involving accused), with United States v. Hall, 50 M.J. 247, 251 (C.A.A.F. 1999) (commander not disqualified because he showed no "foul motivation" or "vindictiveness").

Appellant asserts that CPT Miller's actions demonstrate that he was performing law enforcement functions and did not possess a neutral and detached demeanor. Appellant claims that CPT Miller's testimony during the motion hearing before the military judge suggested that he never intended to authorize a search under M.R.E. 315, and that he did not understand the legal requirements of such a search. "[T]here is no constitutional requirement that the person [issuing the search authorization] have some minimal legal or educational qualifications." United States v. Lopez, 35 M.J. 35, 40 (C.M.A. 1992) (citing Shadwick v. City of Tampa, 407 U.S. 345 (1972)). As we stated in Lopez, the requirement for impartiality serves to establish "an orderly process and prevent the magistrate from representing a law enforcement interest while at the same time authorizing searches and seizures." Id.

The record does not demonstrate that CPT Miller was biased or participated in the investigation to such an extent, or in

11

such a manner, that he compromised his ability to act impartially. The critical inquiry involves whether the commander conducted an independent assessment of the facts before issuing search authority and remained impartial throughout the investigation process. See Lopez, 35 M.J. at 41. (noting that a commander will be disqualified if the authorization to search is motivated by revenge).

CPT Miller did not predetermine any issues or the outcome of the probable cause decision prior to hearing and viewing the evidence. When he learned that child pornography was potentially circulating among members of his unit after being approached by SFC Powell, CPT Miller took appropriate follow-up action by ordering 1SG Goodwater to investigate and report back to him. In doing so, CPT Miller acted impartially in authorizing the search, reflecting a desire to establish facts before ordering the seizure of Appellant's computer equipment. Significantly, CPT Miller did not authorize the search until after 1SG Goodwater had narrowed the potential suspects to three soldiers, including Appellant.

CPT Miller maintained a degree of "control" over the investigation by directing 1SG Goodwater to speak to SFC Powell and to PFC Parr, but such actions do not suggest bias or predisposition. CPT Miller's actions were consistent with his responsibility as a commander to obtain the facts necessary to

determine whether a search authorization should be issued. After the facts were developed, CPT Miller determined that he had probable cause to authorize the search and seizure of the computer. His subsequent actions, such as requesting the computer password from Appellant, reviewing the files on the computer, and evaluating the evidence, reflect the reasonable actions of a commander charged with maintaining good order and discipline within his unit. These actions do not demonstrate that his prior actions, in the course of considering whether to authorize the search, were undertaken on the basis of bias or predisposition. In that context, we do not treat his decision to review the evidence following the search and seizure as retroactively invalidating his prior actions. There was nothing so unusual about CPT Miller's evaluation of the evidence that warrants a conclusion that he approached his duties under M.R.E. 315 with an impermissible bias. Having made a decision to authorize the search, he was not disqualified from viewing the fruits of the search for the purposes of exercising his responsibilities over the unit as a commander.

C.  PROBABLE CAUSE (ISSUE IV)

M.R.E. 315(f)(2) defines probable cause as "a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." Within these parameters, "the duty of a reviewing court is simply to ensure

13

that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (alterations in original) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). We apply four key principles in reviewing probable cause determinations under M.R.E. 315: (1) we view the facts in the light most favorable to the prevailing party; (2) we give substantial deference to the probable cause determination made by a neutral and detached magistrate; (3) we resolve close cases in favor of the magistrate's decision; and (4) we view the facts in a commonsense manner. See United States v. Macomber, 67 M.J. 214, 218 (C.A.A.F. 2009).

Probable cause to search in this case was based on information provided to CPT Miller by SFC Powell and PFC Parr. Each independently viewed a computer file seemingly portraying child pornography. The information identified a small number of specific individuals involved in the file sharing, including Appellant. CPT Miller chose not to rely on this information alone, and he personally viewed the videos described by SFC Powell and PFC Parr. In describing his decision to authorize a search, CPT Miller testified:

> Sergeant Powell shared files with Parr. They both had the same clip on both computers. Parr then name[d] three other individuals who he shared files with. So, it seemed logical to me that somewhere there might be more additional videos depicting, you know,

> pornographic acts because the guy had shared with Parr
> and they both had the same clip on their computers and
> Parr stated he shared files with three other
> individuals.  So, I felt relatively confident that
> what I was looking for -- the contraband items were
> probably on those three laptops . . . as well.

Based upon these facts, the military judge appropriately concluded that CPT Miller had a substantial basis for making a probable cause determination to authorize the search.  In view of our conclusion in this regard, it is not necessary to address the military judge's alternate rulings that relied on the doctrines of good faith or inevitable discovery (Issue III).

## III.  CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.