# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

───────────────

## No. ACM 40280

───────────────

### UNITED STATES
*Appellee*

**v.**

### Stephen T. ROBLES
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

───────────────

Appeal from the United States Air Force Trial Judiciary

Decided 18 August 2023

───────────────

*Military Judges*: Willie J. Babor (pretrial motions);[1] Mark F. Rosenow (arraignment); Shad R. Kidd.

*Sentence*: Sentence adjudged 15 February 2022 by GCM convened at Buckley Space Force Base, Colorado. Sentence entered by military judge on 28 March 2022: Bad-conduct discharge, confinement for 325 days, forfeiture of all pay and allowances, reduction to E-1, and reprimand.

*For Appellant*: Major Jenna M. Arroyo, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Major Brittany M. Speirs, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge RICHARDSON and Senior Judge CADOTTE joined.

───────────────

---

[1] Pursuant to Article 30a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 830a.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

ANNEXSTAD, Senior Judge:

At a general court-martial, a military judge convicted Appellant, in accordance with his pleas, of one charge and four specifications of willful dereliction of duty, one charge with one specification of wrongful broadcasting of visual images of sexually explicit conduct, and one charge and five specifications of indecent conduct, in violation of Articles 92, 117, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 917, 934.[2] A military judge sentenced Appellant to a bad-conduct discharge, confinement for 325 days, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the sentence.

Appellant raises four issues: (1) whether the military judge erred in admitting victim impact statements; (2) whether Appellant's plea of guilty to Specification 4 of Charge III is provident; (3) whether a provision in Appellant's plea agreement providing that dismissal of certain charges and specifications would ripen into dismissal with prejudice "upon completion of appellate review where the findings and sentence have been upheld" is void or otherwise unenforceable; and (4) whether Appellant's sentence is inappropriately severe.[3]

We have carefully considered issue (3) and find Appellant is not entitled to relief. *See United States v. Goldsmith*, No. ACM 40148, 2023 CCA LEXIS 8, at *15 (A.F. Ct. Crim. App. 11 Jan. 2023) (unpub. op.) (finding plea agreement term—requiring the convening authority to dismiss the additional charges and specifications with prejudice "upon completion of appellate review where the findings and sentence have been upheld"—permissible because it does not violate law or public policy).

Finding no error that materially prejudiced a substantial right of Appellant, we affirm the findings and sentence.

_____

[2] All references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Issue (4) was raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

Appellant joined the Air Force on 8 May 2012. He and MR were married in 2018. On 3 March 2019, Appellant created an account on Tumblr[4] where he uploaded sexually suggestive and sexually explicit photographs of several women. The username used by Appellant on Tumblr translates to "hot Air Force wife [M]." "[M]" was MR's nickname. On the account, Appellant pretended to be his wife so he could curate a fantasy world, through sexually explicit images and captions, where he was engaged in extramarital, sexual relationships with other women.

To further his fantasy, Appellant took images from the personal Facebook or Snapchat pages of women (the victims) he knew, to include his wife, and posted them on Tumblr next to pornographic images of women who resembled the victims. He would then post captions to the photographs to create the impression that the victims were in a sexual relationship with him. For instance, SD was Appellant's sister-in-law. He took an image of her from her Facebook page and posted it next to images of women performing sexually explicit acts. He then created the caption, "[H]ubby getting suck by my slutty sister [heart eyes emoji]," to create the impression that his wife had posted pictures of her sister performing oral sex on Appellant. Appellant created similar posts for all the victims and in many cases used the victim's real names on the public site. None of the women, except his wife MR, had ever been in an intimate relationship with Appellant.

On the same Tumblr account, Appellant posted actual photographs of MR exposing her breasts and performing oral sex on him. The photographs were taken in "the confidence of [their] marriage" and MR did not consent to or know that Appellant posted the images publicly on the Internet.

Prior to any formal investigation, Appellant was contacted by two victims regarding the publicly posted images. Appellant repeatedly denied that he was involved with the Tumblr account. One of the victims, CJ, a prior co-worker of Appellant, reached out to Appellant via Facebook to ask about the images, prompting the following conversation:

> CJ: I never would send a photo like that so it had to be someone who knew me and had a connection to [a mutual friend].
>
> . . . .

---

[4] Tumblr is a microblogging and social networking website that allows users to post multimedia and other content to a short-form blog.

Appellant: [AT[5]] blames us but I never had any pictures like that of her. And I would NEVER want pictures of [MR] out there like that. . . .

. . . .

CJ: [AT] thought it was you?

Appellant: She thought it was [MR] then started to say it was me.

. . . .

CJ: Someone posted photos of your wife and you accepted that?

Appellant: No!!

CJ: Why would someone do this?

Appellant: I had talked to OSI [Air Force Office of Special Investigations (AFOSI)] and they said since the page was down there wasn't much they could do.

. . . .

CJ: This is f[**]ked up. I'm having a hard time believing this isn't you because all of these women are connected to you.

Appellant: No way I'd do that!

CJ: Who would?

Appellant: I never knew what [T]umblr was before [AT] told me.

CJ: Who could it be then? [a mutual friend]? [another mutual friend]?

Appellant then listed three people both he and CJ knew as possible creators of the page and said one of them was "scumbag" enough to do it. CJ brought up that AFOSI would find the creator. Appellant replied, "I hope they do. This has f[**]ked me and [MR] up for months. What's f[**]ked up is [people] are blaming me for this. . . ." When CJ asked him if he created the images and posts,

---

[5] AT was another victim. AT learned of the Tumblr page when a high school friend she had not spoken to in years reached out to her and sent her the link from Appellant's Tumblr page which contained images of her. AT initially believed that MR was the creator of the account because it was written from her perspective. When AT confronted Appellant, he denied any responsibility for the account.

Appellant stated, "I'm dead serious. I have no clue how this [T]umblr s[**]t happened. That's the honest truth . . . I swear to you. I . . . don't have any knowledge about [T]umblr before hand [sic] or it even existed. That's the honest truth." He also told CJ, "I feel your pain in all of this as [we] went through it already. Things in day to day remind us of this crazy bulls[**]t and it ruins our day." When CJ asked Appellant if he knew anything else because she could not handle any more surprises, he said, "I even paid for an IP [(Internet protocol)] address tracker to see if I could track the pictures. And it would direct me to New York or Germany." Once Appellant knew he was being investigated by AFOSI, he reached out to a prior co-worker, JB. He asked, "Bro you know anything about [T]umblr and some pics of chicks we know from [an Air Force Base] on there?" JB replied that he was not aware of the account. Despite being the creator of the posts, Appellant said:

> Hmmmm ok. I guess there was some pics of chicks we know. Now [CJ] and [AT] are blaming me for it. Guess that's what [AF]OSI is investigating me for. Yea I had never heard of [T]umblr until this. Which f[**]k I would never post pictures like that online for everyone to see. Besides it being f[**]ked up I'm not stupid I know you can go to jail for that s[**]t.

On 24 September 2021, the convening authority referred six charges and fourteen specifications against Appellant. Charge I and its four specifications alleged Appellant was derelict in the performance of his duties, in violation of Article 92, UCMJ, when "he willfully failed to refrain from electronically posting descriptions and sexually explicit images on Tumblr, a social networking platform, to create the appearance that [the victims were] pictured in the sexually explicit images." Each specification was for one victim: SD, LG, HoP, and KR.

Charge II alleged Appellant wrongfully broadcasted sexually explicit images of his wife, MR, without her consent and when she retained a reasonable expectation of privacy, in violation of Article 117a, UCMJ.

Charge III and its five specifications alleged Appellant committed indecent conduct, in violation of Article 134, UCMJ, when he electronically posted descriptions and sexually explicit images on Tumblr to create the appearance that the victims were pictured in the sexually explicit images. Each specification was for one victim: JS, AT, HP, MD, and CJ. Specification 1 of Charge III alleged Appellant's behavior was to the prejudice of good order and discipline and of a nature to bring discredit upon the armed forces, while Specifications 2–5 of Charge III alleged his behavior was of a nature to bring discredit upon the armed forces.

Two additional charges were also referred. Additional Charge I and its specification alleged Appellant unlawfully wrapped his hands around MR's neck in violation of Article 128, UCMJ. Additional Charge II and its two specifications alleged Appellant tackled MR to the ground with his body and jabbed her in the neck with his finger, also in violation of Article 128, UCMJ.

On 4 February 2022, Appellant entered into a plea agreement and agreed to plead guilty to Charge I and its four specifications, Charge II and its specification, and Charge III and its five specifications. In exchange for his guilty pleas, the convening authority agreed to withdraw and dismiss Additional Charge I and its specification and Additional Charge II and its specifications, initially without prejudice and then later with prejudice upon completion of appellate review, if the findings and sentence are upheld.

## II. DISCUSSION

### A. Victim Impact Statements

Appellant contends that the military judge abused his discretion when he admitted written unsworn statements by HoP, HP, and CJ during presentencing proceedings over trial defense counsel's objections. Appellant argues now, as he did during presentencing, that a victim's right to be reasonably heard is "tethered to" the physical presence of the crime victim at the presentencing proceeding pursuant to Rule for Courts-Martial (R.C.M.) 1001(a)(3)(A). We disagree and find that the military judge did not abuse his discretion and that no relief is warranted.

#### 1. Additional Background

At the close of the Government's presentencing case, the military judge asked if there were any crime victims who wished to be heard. In response, trial counsel informed the military judge there were ten crime victims who wished to exercise their right to be heard. HoP, HP, and CJ were not physically present at the proceeding but chose, along with seven other victims, to exercise their right to be heard and submitted unsworn victim impact statements. HoP, HP, and CJ were not represented by a special victims' counsel.

Trial defense counsel initially objected to portions of the unsworn statements, including statements by HP and CJ. Trial counsel relayed the objections to HP and CJ, and they chose to redact the objected-to material and resubmit their statements to the court with redactions. Trial defense counsel then objected to the unsworn statements of HoP, HP, and CJ in their entirety. Trial defense counsel first objected to HoP's unsworn statement due to lack of authentication because HoP was not present to "ask that [her statement] be

considered with respect to [Appellant's] case." After the trial counsel explained there was a witness present who could testify that HoP was advised of her right to be heard and then provided the written unsworn statement in response to that advisement, trial defense counsel withdrew the objection for lack of authentication.

Trial defense counsel then focused his objection on whether R.C.M. 1001 required that it be "the victim, the [victim's] representative, or a designee created by the military judge" who would "provide" the court with the victim's unsworn statement. Trial defense counsel reiterated the same objection to HP's and CJ's unsworn statements when he argued that the victim was not the individual who actually offered the statement.

In his ruling, the military judge first explained that, procedurally, R.C.M. 1001(c)(5)(B) required a crime victim who elected to present an unsworn statement to first provide a written proffer of the matters to both trial counsel and trial defense counsel. The military judge noted that procedure occurred. The military judge then explained he did not see a specific requirement in R.C.M. 1001(c) that a victim had to be personally present in order to provide a written statement to the court. He explained, "[I]t would seem to undermine the purpose of the rule to [only] allow a written unsworn statement, if the victim has to actually come in and testify, or make some verbal statement in order to give a written unsworn statement." The military judge then found that HoP, HP and CJ were all named victims who participated in the case against Appellant, and that each had provided a statement identifying who it was from, providing details of Appellant's crimes, describing the impact Appellant's actions had on them, and asking the court to consider the statements.

The military judge overruled trial defense counsel's objections and admitted all three unsworn statements as court exhibits.

**2. Law**

A military judge's interpretation of R.C.M. 1001 is a question of law we review de novo. *See United States v. Barker*, 77 M.J. 377, 382 (C.A.A.F. 2018) (citations omitted). However, we review a military judge's decision to accept a victim impact statement offered pursuant to R.C.M. 1001 for an abuse of discretion. *See United States v. Edwards*, 82 M.J. 239, 243 (C.A.A.F. 2022). A military judge "abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *United States v. Humpherys*, 57 M.J. 83, 90 (C.A.A.F. 2002) (quoting *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995)). The abuse of discretion standard is a "strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'" *United States v. White,* 69 M.J.

236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

When considering issues of statutory interpretation, courts first look to the text of the statute. *United States v. Jacobsen*, 77 M.J. 81, 84 (C.A.A.F. 2017) (citations omitted). "When statutory language is unambiguous, the statute's plain language will control." *Id.* (footnote omitted) (citing *United States v. Schell*, 72 M.J. 339, 343 (C.A.A.F. 2013)).

Congress granted crime victims a right to "reasonably be heard" during any sentencing proceeding related to an offense for which they are a victim. Articles 6b(a)(4) and 6b(a)(4)(B), UCMJ, 10 U.S.C. §§ 806b(a)(4), 806b(a)(4)(B).

Rule for Courts-Martial 1001(c)(2)(A) defines a "crime victim" as "an individual who has suffered direct physical, emotional, or pecuniary harm as a result of the commission of an offense of which the accused was found guilty." A crime victim has a "right to make a sworn statement, unsworn statement, or both." R.C.M. 1001(a)(3)(A).

"Prior to the conclusion of the presentencing proceeding, the military judge shall ensure that any such crime victim [is] afforded the opportunity to be reasonably heard." *Id.* "[T]he right to be reasonably heard requires that the victims be contacted, given the choice to participate in a particular case, and, if they choose to make a statement, offer the statement themselves, through counsel, or through a 'victim's designee' where appropriate." *United States v. Hamilton*, 78 M.J. 335, 340–41 (C.A.A.F. 2019) (citations omitted). The introduction of statements under this rule is prohibited without, at a minimum, either the presence or request of the victim. *Barker*, 77 M.J. at 382.

Statements offered under R.C.M. 1001(c)(3) may include victim impact or matters in mitigation. "[V]ictim impact includes any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001(c)(2)(B). "During the presentencing proceedings, there shall be much greater latitude than on the merits to receive information by means other than testimony presented through the personal appearance of witnesses." R.C.M. 1001(f)(1).

Victim impact statements offered under R.C.M. 1001(c) are not "evidence," and thus "the balancing test in Mil. R. Evid. 403 is inapplicable to assessing the reasonable constraints that may be placed upon such statements." *United States v. Hamilton*, 77 M.J. 579, 586 (A.F. Ct. Crim. App. 2017) (en banc) (footnote omitted), *aff'd*, 78 M.J. 335 (C.A.A.F. 2019); *see also United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021) (finding that a victim unsworn statement was

not "evidence" and not subject to the Military Rules of Evidence). As this court explained in *Hamilton,*

> Mil. R. Evid. 403 addresses "legal relevance" and provides that "evidence" may be excluded notwithstanding its logical relevance. In the decision to allow a victim to exercise their right to be heard on sentencing, a military judge is neither making a relevance determination nor ruling on the admissibility of otherwise relevant evidence. Instead, the military judge assesses the content of a victim's unsworn statement not for relevance, but for scope. . . .

*Id.*

When there is error regarding the presentation of victim statements under R.C.M. 1001(c), the test for prejudice "is whether the error substantially influenced the adjudged sentence." *Barker*, 77 M.J. at 384 (internal quotation marks and citation omitted). When determining whether an error had a substantial influence on a sentence, this court considers the following four factors: "(1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017). "An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant." *United States v. Machen*, No. ACM 39295, 2018 CCA LEXIS 419, at *12 (A.F. Ct. Crim. App. 29 Aug. 2018) (unpub. op.) (citing *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007)).

### 3. Analysis

Appellant suggests that because the victims were not physically present and did not personally offer their statements to the military judge, that the military judged erred by accepting the statements. We find nothing in the plain language of R.C.M. 1001(c) that requires a victim to personally enter the courtroom and present their statement to the military judge; it merely states that a victim has the right to be "reasonably heard." As our superior court has stated, the offering of a victim statement under this rule requires, "at a minimum, either the presence or *request* of the victim . . . ." *Barker*, 77 M.J. at 382 (emphasis added). Here, the record clearly supports that HoP, HP, and CJ, all named victims in Appellant's case, *requested* the court consider their unsworn statements. Since they were not eligible for representation by a victim's counsel, they personally offered their written unsworn victim statements to the court through trial counsel and requested trial counsel deliver their statements to the military judge. In this sense the trial counsel was a mere instrumentality

of the crime victims' independently exercising their respective rights to submit written unsworn statements under R.C.M. 1001(c)(5).

Appellant does not challenge the military judge's findings of fact, and we do not find anything in the military judge's findings of fact that is clearly erroneous. As discussed, *supra,* we also find the military judge's conclusions of law were correct. We recognize the abuse of discretion standard is a strict one, and that it requires more than a mere difference of opinion. We do not find the military judge's ruling in this case to be arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *White,* 69 M.J. at 239. We conclude the military judge did not abuse his discretion in admitting unsworn victim statements from HoP, HP, or CJ.

## B. Providence of Plea

Appellant claims that the military judge abused his discretion in accepting his guilty plea to Specification 4 of Charge III. Specifically, Appellant contends that the images at issue are not "sexually explicit" as defined in Articles 117a and 134, UCMJ, and therefore argues the military judge erred when he accepted Appellant's plea. We disagree.

### 1. Additional Background

Specification 4 of Charge III read as follows:

> In that [Appellant] . . . did . . . between on or about 1 March 2019 and on or about 31 October 2019, commit indecent conduct, to wit: electronically posting descriptions and *sexually explicit* images on Tumblr, a social networking platform, to create the appearance that [MD] was pictured in the *sexually explicit* images, and that said conduct was of a nature to bring discredit upon the armed forces.

(Emphasis added).

Appellant entered into a plea agreement and pleaded guilty to the Article 134, UCMJ, offenses, described *supra* (Specifications 1–5 of Charge III), among other charges and specifications. Prior to conducting the plea inquiry with Appellant, the military judge had a discussion with the parties regarding the definition of the term "sexually explicit" as charged in the Charge I and Charge III specifications. In referring to the *Manual for Courts-Martial*, the military judge first identified the definition of "sexually explicit conduct" from Article 117a, UCMJ, prohibiting the wrongful broadcast or distribution of intimate visual images, and then the term as defined under Article 134, UCMJ, prohibiting child pornography; the definition of the term was slightly different in each

of the two articles. The military judge further expressed that the term used in the specifications was "sexually explicit" and not "sexually explicit conduct." He further remarked that the stipulation of fact did not use the term "sexually explicit conduct," nor did it use the definitions found in Articles 117a and 134, UCMJ. Instead, he highlighted that paragraph 16 of the stipulation of fact showed the parties agreed that sexually explicit images included photographs "of nude women, women posing in differing forms of lingerie, and women performing sexual acts." Finally, the military judge clarified that the parties intended to use a "more common-sensical [definition], common-understanding approach" to define "sexually explicit" and did not intend to make it a "term of art." The military judge then asked the parties if there was a "meeting of the minds" on that issue. Trial and defense counsel both responded "Yes, Your Honor."

Ultimately, the military judge stated he would use the common sense understanding of the term "sexually explicit" and not the definitions of "sexually explicit conduct" from the *Manual for Courts-Martial*. During the colloquy between the military judge and Appellant during the guilty plea inquiry, the military judge defined the term "sexually explicit" to include "sex acts such as actual or simulated genital to genital contact, oral to genital contact, anal to genital contact, or oral to anal contact. It also include[d] depictions of uncovered genitalia, pubic area, buttocks, or a female breast, that lacks serious artistic, literary, scientific or political value." He also stated the term included "women that are nude, posing in lingerie, or engaged in sex acts" as the parties stipulated to in paragraph 16 of the stipulation of fact. Appellant again did not object to the definition.

Appellant agreed, in the stipulation of fact, that the photographs were "sexually explicit" because they included images of women posed in lingerie and in the nude. During the guilty plea inquiry for Specification 4 of Charge III, the military judge had Appellant view the photographs charged. He asked Appellant if he believed the photographs were "sexually explicit" given the definitions used previously for the Article 92, UCMJ, and the Article 134, UCMJ, offenses, and Appellant agreed they were. Additionally, in the stipulation of fact, Appellant agreed that he was guilty to all elements of the offenses.

Specifically, Appellant detailed how he was friends with MD, then an active-duty military member, and pulled photographs of MD, some which displayed her in uniform, from her Facebook and Snapchat pages. He then posted those photographs alongside photographs from his pornography collection with captions to imply MD was the woman in the sexually explicit images. There were eight images in total—five images of MD, two images of a woman "posing

provocatively" in lingerie and a thong with her buttocks exposed looking over her shoulder, and one image of woman posing in the nude. In the captions, Appellant referred to MD as "side chick slut f[**]k buddy," "side chick slut hotwife f[**]k buddy [MD]," and "Hubbies new sex buddy."

The military judge had also defined the term "indecent." He explained it was a "form of immorality relating to sexual impurity, which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." Appellant said his conduct was indecent because he publicly posted images of MD, an active-duty military member, next to pornographic images to suggest that MD was the woman in all eight pictures. He further explained that when the photographs were viewed in conjunction with the captions it gave the impression that MD was engaged in an extramarital relationship with another military member. Appellant stipulated that "[t]he intended false appearance is a form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations."

The military judge found Appellant's plea provident and accepted his plea of guilty for Specification 4 of Charge III.

**2. Law**

We review a military judge's decision to accept the accused's guilty plea for an abuse of discretion. *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013). "An abuse of discretion occurs when there is 'something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea.'" *Id.* (quoting *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)).

"The military judge must ensure there is a basis in law and fact to support the plea to the offense charged." *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (citing *Inabinette*, 66 M.J. at 321–22) (additional citation omitted). In addition, the military judge must ensure the accused understands and agrees to the terms of any pretrial agreement or plea agreement in order "to ensure that [the] accused is making a fully informed decision as to whether or not to plead guilty." *Id.* (citing *United States v. King*, 3 M.J. 458, 458–59 (C.M.A. 1977)).

"A guilty plea is provident if the facts elicited make out each element of the charged offense." *Harrow*, 65 M.J. at 205 (citations omitted). "[A] military judge must elicit actual facts from an accused and not merely legal conclusions." *United States v. Price*, 76 M.J. 136, 138 (C.A.A.F. 2017).

12

"[W]hen a plea of guilty is attacked for the first time on appeal, the facts will be viewed in the light most favorable to the [G]overnment." *United States v. Arnold*, 40 M.J. 744, 745 (A.F.C.M.R. 1994) (citation omitted).

"Once the military judge has accepted a plea as provident and has entered findings based on it, an appellate court will not reverse that finding and reject the plea unless it finds a substantial conflict between the plea and the accused's statements or other evidence of record." *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996).

An appellant bears the burden of establishing that the record shows "a substantial basis in law or fact to question the plea." *United States v. Phillips*, 74 M.J. 20, 21–22 (C.A.A.F. 2015) (citation omitted). Appellate courts will not speculate on the existence of facts that might invalidate a plea especially where the matter raised post-trial contradicts an appellant's express admission on the record. *See United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995).

Whether an accused has waived or instead forfeited an issue is a question of law this court reviews de novo. *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted).

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020) (quoting *Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)) (additional citation omitted). "Consequently, while we review forfeited issues for plain error, . . . a valid waiver leaves no error" to correct on appeal. *Id.* (internal quotation marks and citation omitted).

Stated another way: "A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (internal quotation marks and citation omitted).

The elements of the offense of indecent conduct, as detailed in Charge III, Specification 4, required that: (1) Appellant engaged in certain conduct, to wit: electronically posting descriptions and sexually explicit images on Tumblr, a social networking platform, to create the appearance that MD was pictured in the sexually explicit images; (2) the conduct was indecent; and (3) under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 104.b.

"Indecent," as used in Article 134, UCMJ, means a "form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to

13

common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." *MCM*, pt. IV, ¶ 104.c.(1).

### 3. Analysis

We find that Appellant made a deliberate decision when he agreed that the definitions of "sexually explicit conduct" used in Articles 117a and 134, UCMJ, did not apply to the charged offense to which Appellant pleaded guilty. *See Campos*, 67 M.J. at 332. The record also details Appellant expressly agreed in the stipulation of fact that a more "common sense" definition applied to his offenses. Additionally, during his guilty plea, Appellant agreed that "sexually explicit" was not a term of art, as applied to the offense to which he pleaded guilty.

We find the record supports that the military judge ensured Appellant knew what definition was being used and understood the definition. Furthermore, the military judge confirmed multiple times that it was the parties' intent to define the term "sexually explicit" more broadly than the definitions of sexually explicit conduct in Articles 117a and 134, UCMJ. At no point did Appellant indicate any disagreement with the definition used by the military judge. Here, Appellant, through counsel, did not just fail to object; he affirmatively declined to object to the definition when his counsel answered "Yes, Your Honor," acknowledging that Appellant agreed on the definition of "sexually explicit" to be used. We conclude the record supports that Appellant intentionally relinquished or abandoned his right to object to the definition used. *See Davis*, 79 M.J. at 331.

Putting aside Appellant's failure to object, we find the military judge did not abuse his discretion accepting Appellant's guilty plea to Specification 4 of Charge III. Appellant, in both the stipulation of fact and expressly in his own words during the guilty-plea inquiry, established sufficient facts to establish each element of the offense of indecent conduct. We see nothing in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding Appellant's guilty plea.

Appellant's lone argument centers around a definition of "sexually explicit" as used in the specification to describe the images. We note that this definition is not an element of the offense; it was part of the specification that provided a description of how Appellant committed the charged conduct. We see no reason that the parties would be prohibited from agreeing in the plea agreement and during the guilty plea to the definition to be used in this case. We do not find that the law requires the military judge to use a definition for "sexually explicit *conduct*" found elsewhere in the UCMJ, when the specification itself used the term "sexually explicit *images*." (Emphasis added). Appellant again expressly

agreed on the definition to be used and that his conduct met the agreed-upon definition. In conclusion, Appellant has not shown the military judge incorrectly applied the law or that his acceptance of Appellant's guilty plea was arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *See generally United States v. Shields*, 83 M.J. 226 (C.A.A.F. 2023) (articulating abuse of discretion standard). Therefore, Appellant's plea to Specification 4 of Charge III was provident.

**C. Sentence Severity**

Appellant contends his sentence is inappropriately severe. He describes hardships he has faced, remorse he has expressed, and his high rehabilitative potential. He asks that we use our authority under Article 66(d), UCMJ, 10 U.S.C. § 866(d), to modify his sentence. We are not persuaded Appellant's sentence is inappropriately severe and find no relief is warranted.

"We review sentence appropriateness de novo." *United States v. Datavs*, 70 M.J. 595, 604 (A.F. Ct. Crim. App. 2011) (citing *United States v. Baier*, 60 M.J. 382, 383–84 (C.A.A.F. 2005)), *aff'd*, 71 M.J. 420 (C.A.A.F. 2012). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have discretion in determining whether a sentence is appropriate, we are not authorized to engage in exercises of clemency. *See United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

We have conducted a thorough review of Appellant's entire court-martial record, including his record of service, and all the matters submitted in mitigation, including both his oral and written unsworn statements. We find that the nature and seriousness of the offenses support the adjudged sentence of a bad-conduct discharge, confinement for 325 days, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(d), UCMJ, we conclude the sentence is not inappropriately severe and we affirm the sentence adjudged.

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court